656 S.E.2d 784

**Jesse COOK and Toni Smith, as natural parent and Guardian ad Litem for Tracie Smith, a minor under the age of fifteen, Appellants,**

v.

**STATE FARM AUTOMOBILE INSURANCE COMPANY, Respondent.**

No. 4337.

Court of Appeals of South Carolina.

Submitted Dec. 1, 2007.

Decided Jan. 17, 2008.

428

Ian D. Maguire and Vivien Sookram, both of Myrtle Beach, for Appellants.

Linda Weeks Gangi, of Conway, for Respondent.

WILLIAMS, J.

Toni Smith (Mother), as guardian ad litem and natural parent for Tracie Smith (Daughter), and Jesse Cook (Grandfather) appeal the Master–in–Equity's (the Master) order finding Daughter was not entitled to recover underinsured motorist (UIM) benefits under Grandfather's insurance policies with State Farm Automobile Insurance Company (State Farm). We affirm.

## FACTS

On November 3, 2001, Daughter was a passenger in a 1999 Isuzu automobile, which collided with a tree. Daughter, a minor at the time, suffered personal injuries in the collision. Grandfather and Mother filed an action against the driver.

The driver tendered her insurance policy limits of $15,000, and Grandfather and Mother subsequently made a claim on Daughter's behalf for the UIM coverage under Grandfather's automobile insurance policies.

At the time of the collision, Grandfather owned three automobiles, each insured by State Farm. All three policies contained UIM coverage in the amount of $25,000. State Farm refused the claim for the UIM coverage. State Farm asserted Daughter was not a resident relative of Grandfather's household, and consequently, Daughter was not insured under the policies.

Grandfather and Mother filed a declaratory judgment action against State Farm to determine Daughter's ability to recover under the policies. At trial, Grandfather and Mother presented evidence regarding Daughter's residence. Ultimately, the Master concluded Daughter did not primarily reside with Grandfather, and therefore, she was not entitled to recover the UIM benefits under the policies. This appeal follows.

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "An issue essentially one at law, will not be transformed into one in equity simply because declaratory relief is sought." *Id.* In South Carolina, an insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law. *Estate of Revis by Revis v. Revis*, 326 S.C. 470, 476, 484 S.E.2d 112, 115 (Ct.App.1997). "Contract actions are actions at law." *Hofer v. St. Clair*, 298 S.C. 503, 508, 381 S.E.2d 736, 739 (1989).

Our scope of review for a case heard by a master-in-equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury. *Wigfall v. Fobbs*, 295 S.C. 59, 60–61, 367 S.E.2d 156, 157 (1988). Therefore, we may not disturb the master's findings of fact unless those findings are "wholly unsupported by the evidence or controlled by an erroneous conception or application of the law." *Auto Owners Ins. Co. v. Langford*, 330 S.C.

578, 581, 500 S.E.2d 496, 498 (Ct.App.1998) (internal quotations and citations omitted).

The determination of resident relative status is a factual finding for the trial court. *Langford,* 330 S.C. at 581, 500 S.E.2d at 497. This finding must be affirmed unless no evidence reasonably supports it or the trial court made an error of law. *Id.* at 581, 500 S.E.2d at 498.

## LAW/ANALYSIS

Grandfather and Mother argue the Master erred in finding Daughter did not primarily reside with Grandfather and, therefore, in finding Daughter was not entitled to UIM coverage under Grandfather's State Farm policies. Specifically, Grandfather and Mother contend the Master failed to broadly construe the applicable clauses of the policies. They maintain under a broader construction, the evidence would support a finding that Daughter primarily resided with Grandfather. We disagree.

In South Carolina, clauses of inclusion should be broadly construed in favor of coverage, and when there are doubts about the existence or extent of coverage, the language of the policy is to be "understood in its most inclusive sense." *Buddin v. Nationwide Mut. Ins. Co.,* 250 S.C. 332, 337–38, 157 S.E.2d 633, 635 (1967). Courts should not, however, "torture the meaning of policy language in order to extend" or defeat coverage that was "never intended by the parties." *Torrington Co. v. Aetna Cas. & Sur. Co.,* 264 S.C. 636, 643, 216 S.E.2d 547, 550 (1975). "Insurance policies are subject to general rules of contract construction." *State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 234, 530 S.E.2d 896, 897 (Ct.App. 2000). Accordingly, courts "should give policy language its plain, ordinary and popular meaning." *Id.*

In the present case, Grandfather's three automobile insurance policies issued by State Farm are at issue. All three policies contain language that extends UIM coverage to Grandfather, his spouse, and his relatives.[1] The policies de-

---

1. The coverage also extends to permissive occupants and users of the covered automobiles; however, this policy language is not applicable in the instant case.

fine a relative as "a person related to you or your spouse by blood, marriage or adoption who resides primarily with you." [2] Giving the policy language its plain, ordinary and popular meaning, it is clear to recover under the policy, a person must be a relative of the policy holder by "blood, marriage or adoption," as well as "reside[ ] primarily with" that policy holder. Daughter is related to Grandfather by blood; thus, the determinative issue is whether Daughter resided "primarily with" Grandfather at the time of the accident.

The standard for determining whether an individual is a resident of the same household was discussed in *Buddin*, where our Supreme Court stated, "[A] resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." 250 S.C. at 339, 157 S.E.2d at 636 (citing *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 241 Cal.App.2d 303, 50 Cal.Rptr. 508, 514 (1966)). Since *Buddin*, this standard has been applied to varying factual situations,[3] making it clear the resident relative analysis depends heavily on the facts of each situation and has no bright line test. *Auto–Owners Ins. Co. v. Horne*, 356 S.C. 52, 61, 586 S.E.2d 865, 870 (Ct.App.2003).

Grandfather and Mother argue the evidence does not support the Master's findings under the *Buddin* standard. Spe-

**2.** The policy's definition of relative also includes "unmarried and unemancipated" children who are "away at school." This policy language, however, is not applicable in the instant case.

**3.** *See Auto–Owners Ins. Co. v. Horne*, 356 S.C. 52, 68–69, 586 S.E.2d 865, 874 (Ct.App.2003) (holding that a daughter was not a resident-relative of her father, the non-custodial parent, for purposes of stacking UIM coverage where she lived with her mother in Conway and only occasionally visited her father in Saluda); *Richardson v. S.C. Farm Bureau Mut. Ins. Co.*, 336 S.C. 233, 236–37, 519 S.E.2d 120, 122 (Ct.App.1999) (holding that a daughter was not a resident relative of her parents' household when she had moved away as a graduate student several years before, maintained her own residence in another town, and only kept a few items at her parents' home); *Langford*, 330 S.C. at 583–84, 500 S.E.2d at 499 (holding that a granddaughter was not a resident relative with her grandmother when she usually lived with her mother and only stayed with her grandmother when she and her mother fought).

cifically, they argue Daughter and Grandfather's "unique" living arrangement comprised a singular residence. Ample evidence in the record supports the conclusion that the mobile home and the house were separate residences. The parties stipulated Grandfather lived with his wife in a two bedroom house located in Galivants Ferry, South Carolina. Grandfather owned the surrounding real estate. A mobile home owned by Mother and her husband, Billy Ray Smith (Father), was also located on the same property. The two structures had separate property tax assessments, electrical services, phone services, septic tanks, and insurance policies. Mother and Father owned the mobile home, while Grandfather owned the house. Further, testimony indicated the two structures were physically separate with a fence between them. Father testified he and Mother paid $100 a month in rent to Grandfather. The record also reveals the bills and expenses for the two homes were paid separately. While Grandfather testified he helped pay the bills for the mobile home for a period of time, he confessed he only did so to help Mother and Father because they could not afford to pay the bills. Lastly, there was testimony Father stayed in the mobile home exclusively and did not consider the two homes to be a single residence. Accordingly, we find that evidence supports the conclusion the mobile home and house were in fact two separate residences.

In addition, evidence supports the Master's conclusion that Daughter resided primarily in the mobile home and not in the house with Grandfather. Several witnesses testified Daughter, along with her parents and siblings, lived in the mobile home, and Grandfather and his wife lived in the house. The record also shows the majority of the family possessions of Mother and Father were stored in the mobile home, and Daughter and her siblings only kept a few toys and a change of clothes in Grandfather's house. Grandfather's wife testified that she would care for the children while Mother was away, and the children would leave Grandfather's house and return to the mobile home as soon as Mother returned home. Therefore, we find the Master did not err in concluding Daughter did not primarily reside with Grandfather. Accordingly, we find the Master properly found Daughter was not entitled to UIM benefits under Grandfather's insurance policies.

## CONCLUSION

For the foregoing reasons, the judgment of the Master is **AFFIRMED.**[4]

ANDERSON and SHORT, JJ., concur.

---

4.  We decide this case without oral argument pursuant to Rule 215, SCACR.